266 So.2d 254 (1972)
W. C. BRADFORD et al., Plaintiffs-Appellants,
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 11900.
Court of Appeal of Louisiana, Second Circuit.
June 27, 1972.
Rehearing Denied September 12, 1972.
Writ Refused November 16, 1972.
Pugh & Nelson, Shreveport, for appellant.
Hargrove, Guyton, Van Hook & Ramey, Shreveport, for appellee.
Before BOLIN, PRICE and HEARD, JJ.
En Banc. Rehearing Denied September 12, 1972.
BOLIN, Judge.
Plaintiffs, alleging they were employed as policemen in the Department of Public Safety for the City of Shreveport, sued the city for overtime pay allegedly due them under the provisions of Louisiana R.S. 33:2213. Defendant filed an exception of no cause of action which was sustained, and plaintiffs appeal. We reverse the judgment of the lower court.
Defendant asserts in the exception the city was created under a plan of government adopted pursuant to Article 14, Section 37, Louisiana Constitution of 1921. The basis for the exception is enunciated in Articles 3 and 4 thereof, as follows:

3.
"Under the aforesaid Constitutional mandate, the internal affairs of the City of Shreveport, including, without limitation, the obligation to establish a police *255 department and the authority to determine its organization and structure, including the hours of work of and payment of overtime to its policemen, is vested exclusively in the people of the City of Shreveport.

4.
"The Legislature of Louisiana is not vested with power or authority to alter, change or interfere with the aforesaid power and authority granted to the City of Shreveport by the Constitution of this State and, consequently, Section 4 of Act No. 101 of 1948 (Louisiana Revised Statutes 33:2213) is not applicable and cannot be constitutionally applied insofar as it purports to affect the City of Shreveport."
Article 14, Section 37, of the Louisiana Constitution provides:
"The people of the City of Shreveport shall have power to establish in the manner hereinafter provided, government for the said City.
[Sub-section (1) details the method by which a city charter may be created and adopted.]
(2) The plan of government shall be subject to amendment by election of the people as provided therein."
La.R.S. 33:2213, upon which plaintiffs base their cause of action, provides:
"The maximum hours of work required of any full-time paid patrolman, patrolman first class, sergeant, lieutenant, or captain, or any other employee of the police department, except those employed in a position, grade, or class above that of captain, in any municipality affected by this Sub-part, shall be forty-eight hours in any one calendar week, and eight hours in any one day. In cases of emergency, any employee may be required to work in excess of the maximum. For each hour so worked the employee shall be paid at the rate of one and one-half times his usual salary, to be determined by reducing his monthly salary to an hourly scale."
The above statute is not a special law but has general applicability as reflected by the first paragraph of R.S. 33:2212:
"A. Except as otherwise provided by law, the governing body of each municipality having a population of not less than twelve thousand nor more than two hundred fifty thousand shall pay each employee of its police department a salary of not less than the minimum rate of pay established in accordance with the grades, ranks or classes of positions as provided in this Section."
The City of Shreveport, having a population of between 12,000 and 250,000, is therefore subject to the minimum salary statute for its policemen, unless the cited constitutional provision authorizing the creation of the city government renders the statute inapplicable.
The decision of the lower court was based principally upon La Fleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir. 1960), and Letellier v. Jefferson Parish, 254 La. 1067, 229 So.2d 101 (1969). Counsel for appellee, in a well written and comprehensive brief before this court, also contend these cases are controlling.
While the cited cases are similar, in that each arose in a city operating under a constitutional home rule charter, we find they are distinguishable from this case. In La Fleur the constitutional amendment authorizing the creation of the city government of Baton Rouge provides:
"The people of East Baton Rouge Parish shall have power to establish, in the manner hereinafter provided, government for the Parish and the several municipal corporations and other political subdivisions and districts situated therein.
* * * * * *
"(2) Plan of government. Subject to the constitution and laws of this state *256 with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish, such plan of government may provide, among other things:...." [Article 14, § 3(a)]
In La Fleur several members of the Baton Rouge Fire Department sought a declaratory judgment to ascertain whether the City of Baton Rouge was affected by a state statute providing minimum salaries for firemen in municipalities having a population in excess of 13,000. The court held that under the constitutional provision creating the City of Baton Rouge a general act of the Louisiana Legislature fixing the salaries of firemen was inapplicable to Baton Rouge. However, we think the following quotation from the case discloses the primary basis for the decision:
"A municipality, where created by legislative mandate in accordance with the Constitution, is granted powers and authority which are subject to change by the Legislature but where the creation of the municipality has its origin in the Constitution itself, then the Legislature is not vested with authority to alter, change or interfere with the powers and authority so granted to the municipality. Under the `power and function of government' the obligation on the part of the City of Baton Rouge to furnish a fire department is self-evident, but it is difficult to conceive how the structure and organization of the fire department could be effectuated by the City of Baton Rouge without giving particular consideration to the salaries to be paid to the firemen. Since the aforesaid constitutional provision reserves all matters of structure and organization exclusively to the defendant, City of Baton Rouge, it follows that the question of pay of a fireman being a matter of structure and organization and distinguished from a power or function is reserved exclusively to defendant herein and Act 219 of 1956 is not applicable to defendant herein." (Emphasis supplied by this Court)
In Letellier the constitutional article affecting Jefferson Parish is almost identical to the provision under consideration in La Fleur. [See Article 14, Section 3(c)] in that case the Jefferson Parish Firefighters Association and four of its members sought a declaratory judgment recognizing a statutory pension plan which had been created by special statute for Jefferson Parish firemen. The trial court held the pension plan contravened the Jefferson Parish home rule charter and was unconstitutional and the Supreme Court affirmed this ruling. After reviewing the constitutional provisions under which the charter was adopted, the court cited and agreed with the La Fleur case. As in La Fleur, the court based its ruling upon the "structure and organization" provision of the constitutional article authorizing the adoption of the Jefferson Parish home rule charter. Our conclusion on this point is based upon the following language in Letellier:
"Conceding the decision contradicts their arguments here, the firemen attack it as unsound. Specifically, they assert the court misconstrued the key words powers and functions, as opposed to structure and organization. When the words are properly defined, they argue, a pension system for firemen is a power or function of local government over which the state retained primary authority. We have carefully reviewed the constitutional language. In our opinion, the establishment and operation of a pension system for firemen is incidental to the operation of the fire department. As such, it forms an integral part of the structure and organization of local government, an internal matter under the exclusive control of Jefferson Parish." (Latter emphasis added by this Court)
Since the constitutional article authorizing the adoption of the home rule *257 charter of the City of Shreveport does not include a "structure and organization" provision, we conclude the City of Shreveport does not have the exclusive authority to establish the minimum salaries of its policemen. For a proper decision we are therefore relegated to the general laws on the subject. In City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So. 2d 237 (1949), the court said:
"It is well to mention at the outset that as a general principle `municipal corporations hold and exercise their powers subject to legislative control, and it has been laid down as a broad rule that the legislative authority over the civil, political, and governmental powers of municipal corporations is supreme except as limited by the state and Federal Constitutions.'"
In City of Natchitoches v. State of Louisiana, 221 So.2d 534 (La.App.3d Cir. 1969), it was held that a state statute increasing minimum pay and vacations of local firemen was a general law and was not in conflict with Louisiana Constitution, Article 14, Section 40, which is the general "home rule" charter provision of the constitution. Similarly, since the constitutional article applicable to the City of Shreveport makes no provision affecting the power of the municipality to regulate the pay of its policemen, the general law of Louisiana governs, which in this case is La.R.S. 33:2213.
We deem it appropriate to point out that counsel for both plaintiffs and defendant have made references in their briefs to particular provisions of the charter allegedly adopted by the City of Shreveport. We have not taken into consideration any of the alleged contents of the charter, primarily because we conclude the provisions of the charter are neither relevant nor controlling to the question before this court. Additionally, since La. R.S. 13:3712(B) has not been complied with, this court cannot take judicial notice of the existence and provisions of a municipal charter which is referred to only in statements made in briefs filed before this court. Boles v. Fireman's Fund American Insurance Company, 250 So.2d 529 (La.App.2d Cir. 1971), and cases cited therein.
For the reasons assigned the judgment sustaining the exception of no cause of action is annulled and set aside and the case is remanded for further proceedings consistent with the views herein expressed.