441 So.2d 1243 (1983)
Ronald J. SPILLMAN, et al.
v.
The CITY OF BATON ROUGE.
No. 14528.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Rehearing Denied December 22, 1983.
*1244 Floyd J. Falcon, Jr., John L. Avant, Baton Rouge, for plaintiff-appellant Ronald J. Spillman, et al.
Victor A. Sachse, III; Gordon A. Pugh; Claude F. Reynaud, Jr. of Breazeale, Sachse and Wilson and Lynn E. Williams, Parish Atty. and Charles M. Raymond, Ass't. Parish Attorney.
Before COVINGTON, LOTTINGER, PONDER, COLE, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, CRAIN and ALFORD, JJ.
PONDER, Judge.
Certain firemen and former firemen in Baton Rouge brought this class action seeking recalculation of accrued longevity, overtime and holiday pay and payment of the amounts allegedly due.
The issue was whether LaFleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir.1960), which held that R.S. 33:1992, et seq., did not apply to the City of Baton Rouge because of the City's Home Rule Charter with constitutional status, was still viable after the adoption of the new Constitution. Because of possible conflict with the decision of a panel of this court and the importance of the issue, this court considered the case en banc. We affirmed the lower court's decision that the class action was appropriate and that estoppel by laches did not bar collection of that part of the extra pay against which prescription had not run. We further held that rights granted under R.S. 33:1992, 1994 and 1999[1] were not automatically bestowed by the adoption of the Constitution of 1974 without *1245 some additional action on the part of the legislature. We reached this conclusion on the basis of Art. 14, § 26 of the Constitution of 1974 which reads as follows:
"Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."
The effect of our decision in the instant case was that R.S. 33:1992, et seq. still did not apply because the legislature had taken no action thereon after the adoption of the Constitution of 1974. Spillman v. City of Baton Rouge, 417 So.2d 1212 (La.App. 1st Cir.1982). We reversed the lower court despite Art. 6, § 14 of the 1974 Louisiana Constitution which reads as follows:
"No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board." (Emphasis added.)
The Supreme Court granted a writ of review and remanded the case "to reconsider in light of New Orleans Firefighters Association v. Civil Service Commission, 82-C-0025," decided after our decision. Spillman v. City of Baton Rouge, 430 So.2d 92 (La.1983).
In New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, 422 So.2d 402 (La. 1982), the Supreme Court decided that the provisions of Art. 6, Sec. 14, underlined above, removed the obstacle to the application of the provisions of the firemen's minimum wage law to the City of New Orleans despite the declaration of unconstitutionality as applied to the City of New Orleans in Barnett v. Develle, 289 So.2d 129 (La.1974). They further said, "We perceive, therefore, no adequate grounds for adjudging that a reenactment of the statute was required before it could have the effect within the city which it had always had throughout the state." An ungrudging application of that decision to the issues of this case leads, we believe, to the reversal of our prior decision as to the necessity of legislative action.
The question as to the possible conflict of Art. 6, § 14, with §§ 4, 5 and 6,[2] we believe, *1246 was disposed of by the New Orleans Firefighters Association case, also. The court specifically said:
"There is nothing in the wording of Art. 6, § 14 that restricts the power of the legislature to enact minimum wage and working condition laws for firemen. On the contrary, this power is expressly reserved to the legislature as an exception to the provision's restraint upon laws increasing the financial burden of political subdivisions."
* * * * * *
"We conclude that the fire and police minimum wage provision of Art. 6, § 14 is not only an exception to the home-rule financial autonomy created by the remainder of the section, but also is a positive reaffirmance of the plenary power of the legislature to guarantee adequate fire and police protection for all citizens of Louisiana."
It is true that the court was considering the effect of Art. 6, § 14 and of Art. 10, § 10 on each other. However, we can see no different result if the issue is one of the effect of Art. 6, §§ 14 and 4, 5 and 6 with each other. The Constitution grants to the legislature plenary power over the minimum wage and law standards of firemen and policemen. See Ruby v. City of Shreveport, 427 So.2d 1267 (La.App. 2d Cir. 1983), writ denied, 433 So.2d 154 (La.1983).
It is urged that because the court in New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, supra, did not refer to Art. 14, §§ 18, 23 and 26[3] of the 1974 Louisiana *1247 Constitution, the decision therein is not controlling.
The conclusion that Art. 14, § 26 does not control follows from the mandate that we reconsider despite the fact that our prior decision was very specifically grounded on that provision. Sec. 18(A) of Art. 14 would not give more sanctity to LaFleur v. City of Baton Rouge, supra, than the court allowed to Barnett v. Develle, supra. The distinction between universal unconstitutionality and the unconstitutional application to a particular agency would be just as applicable here. Furthermore, examination of the briefs shows that Art. 14, § 18(A) was urged upon the court in the New Orleans Firefighters Association case. The failure to mention was at least a tacit rejection.
Art. 14, § 23 seems to be of less applicability than either § 18 or § 26. Certainly it could not have meant that the Constitution could not have any effect on the legal principle of the LaFleur case, and of any other case that had ever been decided.
For these reasons, the decision of the lower court is affirmed. The defendant is cast with all costs.
AFFIRMED.
LOTTINGER, J., dissents and assigns reasons.
COVINGTON, C.J., and CARTER, J., dissent for reasons assigned by LOTTINGER, J.
LOTTINGER, Judge, dissenting.
I respectfully disagree with the reasoning and conclusion reached by the majority, and therefore dissent.
The fallacy of the majority's opinion is based on the conclusion that inasmuch as the original opinion of this court was founded on the applicability of La. Const. art. XIV, § 26, and that despite that fact the Supreme Court ordered this court to reconsider its original opinion in light of New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, 422 So.2d 402 (La.1982), the Supreme Court was telling this court by the mere remand that La. Const. art. XIV, § 26 did not apply. If for the sake of argument the Supreme Court was of the opinion that Art. XIV, § 26 was not applicable, it could have merely reversed the decision of this court with a notation to see Firefighters, supra. But this it did not do. Instead it ordered a reconsideration, in essence telling this court to reanalyze its conclusion and at the same time consider the decision in Firefighters, supra. Stated another way, the Supreme Court was telling this court to handle this case as if for the first time, but with the benefit of Firefighters, supra. Thus, I disagree that the inapplicability of Art. XIV, § 26 is mandated by the remand for reconsideration.
In Firefighters, the Supreme Court concluded that though a legislative act had been previously ruled unconstitutional as applied to the City of New Orleans, though applicable elsewhere within the state under the Louisiana Constitution of 1921, Barnett v. Develle, 289 So.2d 129 (La.1974), it could perceive of no adequate grounds for requiring a reenactment of the statute under the Louisiana Constitution of 1974 before it could have effect within the City of New Orleans which it always had throughout the state, citing Wilkerson v. Rahrer, 140 U.S. 545, 11 S.Ct. 865, 35 L.Ed. 572 (1890).
Obviously missing from the Supreme Court's decision in Firefighters, supra, is any mention or reference to La. Const. art. XIV, §§ 18, 23 and 26. Similar restrictive *1248 provisions are not found in the United States Constitution, thus, the conclusion that Wilkerson v. Rahrer, supra, is inapposite. The original opinion of this court, 417 So.2d 1212, was based on Art. XIV, § 26, the non-retroactive application section.
Additionally, I fail to see any distinction between the non-applicability of an act of the legislature because of its unconstitutionality in its entirety and its unconstitutionality as it is attempted to be applied to a particular segment or section of society. It either is or it is not constitutional. La. Const. art. XIV, § 18 provides that laws which were in force on the effective date of the 1974 Constitution, constitutional when enacted and not in conflict with the present constitution shall remain in effect. This court in LaFleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir.1960) held that under the Constitution of 1921 the provisions of La.R.S. 33:1992 were not applicable to the City of Baton Rouge. Thus, prior to the 1974 Constitution, La.R.S. 33:1992 had already been declared unconstitutional insofar as it applied to the City of Baton Rouge.
Lastly, Art. XIV, § 23, provides that all judgments existing on the effective date of the 1974 Constitution shall continue unaffected. LaFleur, supra, was a judgment of this court which "shall continue unaffected."
Inasmuch as the Supreme Court in Firefighters, supra, did not consider these constitutional provisions, I am not convinced that it is controlling of the issues in this case. Therefore, I would affirm our original decision, and thus dissent.
NOTES
[1] La.R.S. 33:1992:

The minimum monthly salaries of firemen in municipalities having a population of thirteen thousand or more and of all parish and fire protection district paid firemen, including the avails of any special tax provided by the Constitution of Louisiana for increasing the pay of firemen, shall be in accordance with the following schedule:
(1) A salary of $300.00 a month, which said monthly salary shall be paid semi-monthly not later than the fifth day and the twentieth day of each calendar month.
(2) Engineers shall be paid a salary of not less than ten percent above the minimum salary of a fireman.
(3) Lieutenants shall be paid a salary of not less than fifteen percent above that of a fireman.
(4) Captains shall be paid a salary of not less than twenty-five percent above that of a fireman.
(5) Assistant Chiefs, Battalion Chiefs, and District Chiefs shall be paid a salary of not less than forty percent above that of a fireman.
(6) Mechanic or Assistant Mechanic, or any other person doing this type of work for the Fire Department shall be paid a salary of not less than twenty-five percent above that of a fireman.
(7) Superintendent of Fire Alarm System, or any other person doing this type of work for the Fire Department, shall be paid a salary of not less than forty percent above that of a fireman.
(8) Fire Inspector, or any other person doing this type of work for the Fire Department, shall be paid a salary of not less than twenty-five percent above that of a fireman.
(9) Fire Instructor shall be paid a salary of not less than twenty-five percent above that of a fireman.
From and after the first day of August, A.D., 1962, each member of the Fire Department who has had three years continuous service shall receive an increase in salary of two percent and shall, thereafter, receive an increase in salary of two percent for each years additional service up to and including twenty years. As amended Acts 1956, No. 219, § 1; Acts 1962, No. 132, § 1.
La.R.S. 33:1994:
A. The maximum hours of work required of firemen covered by this Sub-part in cities having a population of thirteen thousand or more and that of all parish and fire protection district paid firemen in any calendar week shall be sixty hours. However, in case of emergencies, they may be required to work in excess of the maximum hours. For each hour so worked in excess of sixty hours in any calendar week a fireman shall be paid at the rate of one and one-half times his usual salary, to be determined by reducing his average monthly salary to an hourly scale.
B. The maximum hours of work required by persons employed or engaged full time by municipalities or municipal fire departments or by parish or parish fire departments or fire protection districts as operators of fire alarm systems in any one calendar week shall be forty-two hours. As amended Acts 1950, No. 239, § 1; Acts 1952, No. 242, § 1; Acts 1962, No. 132, § 1.
La.R.S. 33:1999:
Firemen in municipalities, parishes and fire protection districts who are required to work on any or all of certain legal holidays, namely Christmas, New Year's Day, July 4, Labor Day, Thanksgiving Day, and National Memorial Day, shall receive in addition to the compensation to which such employee would be under laws and pay plans now in effect, compensation at the rate of one times his usual salary, to be determined by reducing his average monthly salary to an hourly scale; provided that in lieu of additional compensation, governing authorities, at their option, may grant fire department employees time off from work for which such additional compensation would be due and payable to said employees.
[2] La. Const. Art. 6, §§ 4, 5 and 6:

§ 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
§ 5. (A) Authority to Adopt; Commission.
Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with this Section. The governing authority of a local governmental subdivision may appoint a commission to prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission.
(B) Petition to Elect Commission. The governing authority shall call an election to elect such a commission when presented with a petition signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected subdivision, as certified by the registrar of voters.
(C) Adoption; Amendment; Repeal. A home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose.
(D) Adoption by Two or More Local Governmental Subdivisions. Two or more local governmental subdivisions within the boundaries of one parish may adopt a home rule charter under this Section if approved by a majority of the electors in each affected local governmental subdivision voting thereon in an election held for that purpose. The legislature shall provide by law the method of appointment or election of a commission to prepare and propose a charter consistent with Paragraph (A) of this Section and the method by which the electors may petition for an election consistent with Paragraph (B) of this Section. However, at least one member of the commission shall be elected or appointed from each affected local governmental subdivision.
(E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
(F) Additional Powers and Functions. Except as prohibited by its charter, a local governmental subdivision adopting a home rule charter under this Section shall have the additional powers and functions granted to local governmental subdivisions by other provisions of this constitution.
(G) Parish Officials and School Boards Not Affected. No home rule charter or plan of government shall contain any provision affecting a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner, which is inconsistent with this constitution or law.
§ 6. The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
[3] La. Const. Art. 14, §§ 18, 23 and 26:

§ 18(A). Laws in force on the effective date of this constitution, which were constitutional when enacted and are not in conflict with this constitution, shall remain in effect until altered or repealed or until they expire by their own limitation.
(B) Laws which are in conflict with this constitution shall cease upon its effective date.
§ 23. All writs, actions, suits, proceedings, civil or criminal liabilities, prosecutions, judgments, sentences, orders, decrees, appeals, rights or causes of action, contracts, obligations, claims, demands, titles, and rights existing on the effective date of this constitution shall continue unaffected. All sentences as punishment for crime shall be executed according to their terms.
§ 26. Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution.