459 So.2d 1204 (1984)
NEW ORLEANS FIREFIGHTERS ASSOCIATION
v.
CITY CIVIL SERVICE COMMISSION OF the CITY OF NEW ORLEANS, et al.
No. CA-2075.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
Rehearings Denied December 27, 1984.
Writs Denied February 15, 1985.
*1205 Ralph D. Dwyer, Jr., New Orleans, Louis L. Robein, Jr., Metairie, Wilfred H. Boudreaux, New Orleans, for appellants.
Salvador Anzelmo, City Atty., Bruce E. Naccari, Asst. City Atty., Thomas Milliner, Deputy City Atty., New Orleans, for appellees.
Before GULOTTA, SCHOTT and WARD, JJ.
GULOTTA, Judge.
In this latest chapter of a storied and procedurally complex case, Local 632 of the New Orleans Firefighters Association (Union), the New Orleans Civil Service Commission, (Commission) and the City of New Orleans (City) appeal from another judgment by the trial court concerning overtime pay for New Orleans Firemen. We affirm.

BACKGROUND
Before turning to the contentions on appeal, a brief synopsis of this litigation is essential.
The salaries of municipal firemen in Louisiana are subject to the provisions of LSA-R.S. 33:1991 et seq., known as the Firemen's Minimum Wage Law, and LSA-R.S. 33:2001 et seq., the Firemen's Supplemental Wage Law. LSA-R.S. 33:1994 provides that a fireman shall be paid one and a half times his usual salary for every hour worked in excess of 60 hours per calendar week.[1] LSA-R.S. 33:2002 further provides for extra compensation by the State to local fire department employees in addition to compensation by their employing municipality, parish or fire protection district. Pursuant to LSA-R.S. 33:2004(D), this State supplemental pay is to be included in the calculation and computation of the total wages paid to the firemen in the determination of employee benefits.[2]
In 1979, the Union filed a declaratory judgment action against the City and the Commission to have the Commission calculate overtime benefits to New Orleans firemen based on their City pay and supplemental pay as provided by State statute, *1206 and not merely on their City pay alone as determined by the Commission.
After a trial on the merits, the trial court declared that overtime pay "is to be and should be calculated and computed on the combined basis of both base pay and State supplemental pay as provided by LSA-R.S. 33:2002(A) et seq." The City and the Commission then appealed. In New Orleans Firefighters v. Civil Serv. Com'n, 406 So.2d 752 (La.App. 4th Cir.1981), we affirmed the judgment of the trial court, and the Supreme Court granted writs.
In New Orleans, Etc. v. Civ. Service, Etc., 422 So.2d 402 (La.1982), the Supreme Court, on the writ grant, held that State supplemental pay to firemen "must be considered as part of the floor under wages for the purpose of determining overtime wages" and that "the City Civil Service Commission is not free to ignore the legislative commandment to include State supplements in calculating overtime pay." The Supreme Court then issued the following decree:

DECREE
"In adopting a uniform pay plan, the City Civil Service Commission is obliged to comply with and take into consideration the firemen's minimum wage law, R.S. 33:991, et seq., and the firemen's supplemental wage law, ordered to revise its uniform pay plan in accordance with these laws. Since there appear to be various ways in which the commission could comply with this decree, we limit our mandamus to the foregoing out of respect for the discretion vested in the commission by the constitution. The declaration of law and facts in this opinion shall have the force and effect of a final declaratory judgment. The judgment of the trial and appeals courts are amended to conform with this judgment."
Following the Supreme Court's decision, the Union filed a motion in the trial court for "supplemental and further relief" ordering the Commission and the City to comply with the Supreme Court's decree and to formulate and implement a payment plan for the issuance of back pay to all present and former City Fire Department employees who were employed on July 1, 1979, (the effective date of a letter agreement between the Union and the City to include State supplemental pay in the calculation of overtime) through February 10, 1983 (the date of the implementation of a new pay plan by the Commission pursuant to the Supreme Court's decree).
In written reasons for judgment granting the Union's motion, the trial judge indicated that the plan adopted by the Commission "... did not include any provisions for back pay from July 1, 1979 to the implementation date of February 10, 1983." The trial court reasoned:
"It is obvious that the Supreme Court intentionally desired that the ... Commission implement their decree, which may include the issue of back pay.
Accordingly, the ... Commission is ordered, to consider and decide, within the spirit and letter of the Supreme Court's opinion, the issue of back pay monies that may be due to the plaintiff firemen who were employed on July 1, 1979."
Pursuant to this judgment, the Commission rendered a decision and amended rules, which were then submitted to the City for ratification. In the revised plan, the Commission denied plaintiffs all retroactive back pay, reasoning that it lacked jurisdiction over the matter and that the Supreme Court had not expressed any opinion on retroactivity. Further, the Commission concluded "that inclusion of State supplemental pay is required only for overtime exceeding 60 hours and not overtime from 47th through the 60th hour of any given week", since LSA-R.S. 33:1994 "specifies the precise overtime standards envisioned by the legislature, [and] it must be read in pari materia with 33:2004(D)".
After the Commission submitted this plan, the Union returned to the trial court with a second motion to prevent its implementation. The trial judge held that the firemen were entitled to receive adjusted overtime wages calculated on their base *1207 pay from City and supplemental pay from the State from July 1, 1979 to the date of the implementation of the 1983 revised pay plan. This judgment also held that under the revised plan of 1983, the firemen were to receive overtime pay at the rate of time and a half calculated on City pay for all hours worked between 47 and 60 hours a week, and time and a half on combined City and State supplemental pay after 60 hours.
The Union's subsequent application for writs to the Louisiana Supreme Court was transferred to this court, 445 So.2d 1228, where the Union alternatively filed a petition for a devolutive appeal from the trial court's judgment. We denied writs, but noted that the Union had been granted a devolutive appeal. That appeal, and those by the Commission and the City, are now before us.

CONTENTIONS
The Commission contends the trial judge erred in ordering payment of overtime retroactively to 1979, because the Supreme Court's decree was silent on this issue and the Commission itself has no authority to order such payment. The Commission further argues that the firemen are entitled to time and a half (of their combined State supplemental and City pay) only for hours worked in excess of 60 hours per week.
On the other hand, the Union contends the Supreme Court decree did not prohibit retroactive pay, and further claims entitlement to overtime pay based upon the combined basis of City base pay and State supplemental pay for all hours worked in excess of 46 hours, not 60 hours, per calendar week. It further argues the Commission should be ordered to study and implement other provisions of the firemen's minimum and supplemental wage laws, which establish a minimum salary structure for the various statutory firefighter classifications, maximum hours, paid sick leave, annual vacation, and work on holidays.
Although it does not dispute the Commission's revised plan, the City contends the trial court erred in applying the pay plan retroactively. In alignment with the Commission, the City argues that the Supreme Court's decree was silent on retroactive pay, and, further, that retroactive payment will impose a serious financial hardship upon the City. The City also adopts the Commission's argument that the revised pay plan requires payment of the overtime pay based on combined City and supplemental State pay whenever the work week of a fireman exceeds 60 hours, not 46 hours as argued by the Union. Citing LSA-C. C.P. Art. 1878, the City also argues that the Union failed to file a petition via ordinaria in this declaratory judgment action instead of proceeding by summary motion.

MERITS
Procedure
At the outset, we reject the City's contention that the trial court erred in ruling on the Union's summary motion in the absence of a prior petition via ordinaria.
LSA-C.C.P. Art. 1878, relied on by the City, provides:
Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.
Assuming, without deciding, that the "petition" contemplated by this codal article is a petition via ordinaria, the City did not raise an objection in the trial court to unauthorized use of the summary proceeding or non-conformity of the Union's petition with any of the requirements of LSA-C.C.P. Art. 891. Its failure to raise timely these dilatory exceptions constitutes a waiver. LSA-C.C.P. Art. 926. Accordingly, we find no error in the trial court's ruling on the Union's application for relief by summary motion.
*1208 Retroactivity
We likewise reject the City and the Commission's arguments that the trial court erred in ordering the calculation of overtime benefits to fire department personnel based on the combined City and State supplemental pay retroactively to July 1, 1979 (the effective date of the letter agreement between the City and the Union to include State supplemental pay in calculating overtime). Although the Supreme Court in New Orleans, Etc. v. Civ. Service, Etc., supra, did not expressly mandamus the Commission to calculate overtime benefits retroactively, it is implicit in the Supreme Court's opinion and the entire history of this litigation that retroactive calculation of overtime pay is necessary to comply with the mandate of the State statutes.
The 1979 letter agreement between the City and the Union provided for overtime wages based on a combined base and supplemental salary. The Union filed suit to compel the Commission to alter its pay plan in accordance with this agreement and the State statutory provisions concerning firemen's wages and benefits. In its initial judgment, the trial court concluded that the agreement between the City and the Union was enforceable because the Civil Service rule for calculation of overtime wages was ambiguous and did not conflict with the letter agreement or the legislative mandate of LSA-33:2004(D) providing for inclusion of State supplemental pay in computing overtime.
In New Orleans, Etc. v. Civ. Service, Etc., supra, the Supreme Court, unlike the trial judge, did not find the Commission's pay plan to be "ambiguous" and concluded that the City's agreement with the Union was in conflict with the pay plan. The Supreme Court specifically noted "... that the agreement [between the City and the Union] is therefore unenforceable unless it can be shown that the Civil Service Commission rule is invalid." (Emphasis ours, supra at page 405.) Significantly, however, by later holding in the opinion that the Commission's rule was in contravention of the State's statute concerning firemen's wages, the Court implicitly recognized the enforceability of the 1979 letter agreement between the City and the Union. Under these circumstances, we conclude that by amending and affirming the earlier judgment and ordering the Commission to formulate a new pay plan, the Supreme Court intended the Commission to award overtime pay retroactively to the effective date of the City's agreement with the Union.
We find further support for a retroactive award of overtime pay in the Supreme Court's recognition in its opinion that the Firemen's Minimum Wage Law took effect in New Orleans, as it previously had elsewhere in the State, upon adoption of the 1974 Constitution, without the necessity of "reenacting" the statute. Since 1974, therefore, the Commission has been subject to the State law concerning overtime pay for firemen. As a practical matter, therefore, upon adoption of the agreement between the City and the Union in accordance with those overtime provisions in 1979, the Commission became obligated to revise its pay plan to comply with that State law. To allow the Commission to calculate overtime only prospectively under its revised plan would violate the spirit of both the Supreme Court's opinion and the applicable law.
We find further authority for the trial court's judgment of retroactivity in Spillman v. City of Baton Rouge, 441 So.2d 1243 (La.App. 1st Cir.1983), cited by the trial judge. In Spillman, Baton Rouge firemen likewise alleged that the City of Baton Rouge had failed to include State supplemental pay in computing overtime under LSA-R.S. 33:1994. Relying on the Supreme Court's opinion in New Orleans, etc. v. Civ. Service, etc., supra, our brothers on the First Circuit in Spillman, concluded that with the adoption of the 1974 constitution the State supplemental pay statutes became applicable to the City of Baton Rouge, which, like New Orleans, had formerly been insulated from the firemen's wage statutes because of the city's home rule charter status under the 1921 Constitution. The Spillman decision affirmed *1209 the trial court's award of "accrued" overtime pay to Baton Rouge firemen as a result of this change in the Constitutional provision. See also Turner v. City of Shreveport, 437 So.2d 961 (La.App. 2nd Cir.1983), which likewise retroactively awarded longevity pay for firemen based on a combination of base and state supplemental pay. A similar retroactive application of the law is necessary in the instant case.
Hourly Rate of Overtime Pay
Under the Commission's revised plan of 1983, firemen were to receive time and a half for all hours between 47 and 60 hours per week calculated on City pay only, and time and a half on combined City and State supplemental pay for overtime after 60 hours. The trial judge concluded that the overtime rules of the proposed pay plan are within the power and authority of the Civil Service Commission and not in conflict with the State's statutory scheme.
The Union contends, however, that the overtime provisions of the revised pay plan contravene LSA-R.S. 33:2004(D), which provides that additional State supplemental pay shall be included in the calculation of any "employee benefits" such as overtime pay. According to the Union, because the City of New Orleans has chosen to pay overtime after 46 hours, it must comply with the clear mandate of LSA-R.S. 33:2004(D) and use the combination of City and State supplemental pay as the basis for calculating all such overtime. We disagree.
LSA-R.S. 33:1994 provides that the maximum hours of work required of firemen shall be 60 hours per week, but that for each hour worked in excess of 60 hours in any week, a fireman "shall be paid at the rate of one and one-half times his usual salary...." The Supreme Court in New Orleans, etc. v. Civ. Service, etc., supra, interpreted this provision and the other elements of the Louisiana statutory scheme to "establish a floor under firemen's wages and a ceiling over hours that can be worked without receiving premium pay, resulting in a single scheme to raise substandard wages first by a minimum wage, and then by increased pay for overtime." The Supreme Court further stated, "Together our statutes require that a fireman must be paid at least $540 per month and receive one and one-half times his usual pay for any time worked over sixty hours in a calendar week." (Emphasis ours, supra at p. 412)
Reading the pertinent statutory provisions, together with the Supreme Court's interpretation, we conclude that although State supplemental pay must be considered in calculating overtime wages for hours worked in excess of 60 hours per week, it need not be considered in calculating overtime for hours worked in excess of a normal week up to the 60 hour point. The Louisiana fireman's minimum and supplemental wage laws merely place a floor under wages and a ceiling over hours that can be worked at straight time pay. Within these statutory boundaries, the Commission is free, in its exercise of discretion, to tailor its own pay plan.
The Commission's provision for overtime pay at the rate of one and one half times combined City and State supplemental pay for work in excess of 60 hours per week is in accordance with the minimum statutory requirements. For overtime between 47 and 60 hours per week, the Commission is free to set its own rate of overtime pay. Accordingly, we cannot say the Commission abused its discretion calculating overtime at the rate of time and a half for all hours worked between 47 and 60 hours per week on the basis of City pay only. The Commission's plan setting the rate of overtime pay constitutes one of the legitimate "various ways", envisioned by the Supreme Court, whereby the Commission could comply with the State statutory scheme.
Other Provisions of the Firemen's Minimum Wage Law
We further reject the Union's request that the Commission "be ordered to consider the remaining provisions of the firemen's minimum wage laws." According to the Union, the Commission's proposed pay plan rules are silent concerning a minimum *1210 salary structure for various statutory firefighter classifications (LSA-R.S. 33:1991-1992), maximum hours (LSA-R.S. 33:1994), sick leave and vacation (LSA-R.S. 33:1996), and work on holidays (LSA-R.S. 33:1999). The Union argues that the Commission should be ordered to "study and implement" these provisions in its proposed rules.
The relief requested by the Union is not pertinent to this action for a declaratory judgment. In the present posture of the case, the Commission should be well aware of the need to adhere to the firemen's minimum and supplemental wage laws. It is free to exercise its discretion in formulating a pay plan, so long as it complies with the statutory guidelines and requirements.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
SCHOTT, J., dissents in part.
SCHOTT, Judge, dissenting in part:
I respectfully dissent from that part of the majority opinion which affirms the trial court's decision that the plaintiffs are to receive overtime pay on the basis of state supplemental pay retroactive to July 1, 1979.
This date hardly seems appropriate when the history of the case is considered. Plaintiffs had been contemplating a strike against the city when on March 1, 1979, the then Chief Administrative Officer of the City of New Orleans, Reynard Rochon, advised the head of their union that he was recommending to the Civil Service Commission that the pay plan for plaintiffs be amended so as to include state supplemental pay in the computation of overtime. Rochon further stated that unless the commission made the change by July 1, 1979, the city administration would make the change on its own.
Shortly after July 1 the commission filed suit against Rochon and the city to enjoin them from making the change. The trial court denied the commission injunctive relief, but this court granted certiorari and reversed the trial court, ordering an injunction against the city from including the state supplement in the computation of overtime. Civil Serv. Com'n, Etc. v. Rochon, 374 So.2d 164 (La.App. 4th Cir.1979). Regardless of the city's intentions it could not adjust the overtime pay because this would invade the constitutional prerogatives of the commission which alone has authority in the area of compensation for civil service employees of the city.
Thus, the only significance of the July 1, 1979 date is its selection by the then Chief Administrative Officer of the City to pay this enhanced overtime compensation to the plaintiffs. However, he had no authority to make this commitment and his agreement was null, void, and without effect. Yet the trial court accepted this date as the one from which plaintiffs are to receive enhanced overtime pay.
The central legal issue in the case has always been whether the firemen's minimum wage law, R.S. 33:1991, et seq., is binding on the commission. In other words, must the commission, whose authority to set wages for civil service employees stems from the constitution, defer to the legislature in this area of overtime computation for firemen? In the Rochon case we noted the following:
"... Should the city, or the individuals here involved, be of the opinion, as they apparently are, that under the present law the Commission is mandated to consider both city salaries and supplemental state benefits as the basis for computing overtime pay, their remedy is to take proper court action against the commission to enforce that believed mandated duty." 374 So.2d at 167.
The Rochon decision was handed down on July 20, 1979. Plaintiffs quickly reacted by filing a suit on July 26, 1979 for a declaratory judgment against the commission on the supplemental payovertime computation issue. After plaintiffs prevailed in the trial court and this court, 406 So.2d 752, the supreme court took the case on writs and handed down an opinion on October 29, 1982. 422 So.2d 402.
*1211 The court's opinion makes it quite clear that the issue was not an easy one to resolve. Only after studying the remarks of delegates to the constitutional convention of 1973, considering the new constitution's effect on the court's own previous decisions in Louisiana Civil Service League v. Forbes, 258 La. 390, 246 So.2d 800 (1971) and Barnette v. Develle, 289 So.2d 129 (La.1974) and comparing the constitutional authority of the legislature in the area of firemen's pay with the general constitutional authority of the commission did the supreme court reach a difficult decision. The commission was bound to include in the firemen's pay plan provisions that state supplemental pay be considered in the computation of overtime pay. This opinion became final on December 17, 1982 when the supreme court denied rehearings.
In obedience to the court's mandate the commission adopted a new pay plan in April, 1983 which included the enhanced overtime provisions prospectively, but which declined to award any retroactive benefits in this area. On motion of plaintiffs attacking this new pay plan, the trial court decreed that enhanced overtime pay had to be given from July 1, 1979 to the present. My colleagues have agreed. I respectfully submit that logic and sound policy militate against this position and that it is contrary to the position taken by the supreme court.
It cannot be seriously argued that the position of the commission was frivolous. A fair reading of the supreme court decision at 422 So.2d 402, readily convinces one that the commission was justified in taking the position that it did not have to defer to the legislature with respect to the firemen's minimum wage law. From July, 1979 until April, 1983 it prudently exercised its right to have this position considered and decided by the courts. In the meantime the city budget did not include the enhanced overtime. Government is supposed to operate on the theory that current expenses do not exceed current revenues. When a pay raise is adopted it is funded either by increased revenues or reduced expenses in other areas. Sound fiscal planning is thwarted when the government is required to pay five years of pay increases because a group of employees convinced the courts that their constitutional arguments should prevail over the commission's and the city's.
I am aware that the government must frequently make retroactive payments as when an employee is found to have been wrongfully discharged and is restored to duty or when an injured employee is denied compensation benefits and later found to be entitled to them. But in such cases the ultimate judicial decision provides justice to the individuala wrong is redressed. The employee gets what he was entitled to in the first place. On the other hand, the ultimate decision of the supreme court here was a broad policy type decision reached after an intricate reasoning process concerning constitutional and statutory provisions. The supreme court decision was not an award to compensate the plaintiffs for injury done to them but a declaration for the benefit of plaintiffs, the commission, and the public that in the future this is how overtime pay is to be computed.
Next, I am not persuaded from reading the decision that the supreme court intended for enhanced overtime pay to be awarded retroactively. In argument to this court, counsel told us that the question of retroactive pay was argued to the high court and after its decision came down both sides argued the point in applications for rehearing. If the supreme court intended plaintiffs to receive retroactive pay they would have said so. This was in October December, 1982. The impact on the public fisc of requiring retroactive pay then would have been substantially less severe than now, two years later. Since the pill would have been much easier for the city to swallow then the court would have prescribed it if that was their intention. By declining to prescribe it they indicated that it was not appropriate.
Finally, the language of the decree does not suggest retroactivity. It reads that the commission "[i]n adopting a pay plan ... is *1212 obliged" to consider the firemen's minimum wage law. "... [T]he commission is ordered to revise the uniform pay plan in accordance with these laws." The connotation is for the commission to draft a pay plan for the future. If the court intended to require the city to pay enhanced overtime from July 1, 1979 why would the commission have to be involved? Why would a pay plan be needed for this purpose? This would involve nothing more than a mathematical computation of the benefits due and payment by the city. To conclude that the court intended to award enhanced overtime retroactively is to read something into the decree which is not there.
NOTES
[1] LSA-R.S. 33:1994(A) in pertinent part provides:

A. The maximum hours of work required of firemen covered by this Sub-part in cities having a population of thirteen thousand or more... in any calendar week shall be sixty hours.... For each hour so worked in excess of sixty hours in any calendar week a fireman shall be paid at the rate of one and one-half times his usual salary, to be determined by reducing his average monthly salary to an hourly scale.
[2] LSA-R.S. 33:2004 provides in pertinent part:

D. The additional compensation paid by the state to municipal ... fire department employees as provided by this Sub-part shall be included in the calculation and computation of the total wages paid to the employee ... as well as in the determination of retirement eligibility and benefits ... as well as in the determination of any other employee benefits, sick leave, or disability pay....